May it please the Court, Your Honor. My name is Paul Dayton. I'm counsel for Star Northwest. I have with me in the courtroom my colleague Leslie Clark and Frank Evans, the owner, one of the owners of Star Northwest, is also here today. The issues presented to this Court are whether the District Court incorrectly dismissed challenges to the cardroom ban that was imposed by the City of Kenmore in December 2005. Star Northwest operates a business in a restaurant, a bar, and a cardroom. That business has been in operation since 1958. The cardroom in that business has been continually licensed since 1974. In December 2005, the City Council of the City of Kenmore decided to impose the cardroom ban. When it did that, it had been advised by its City Attorney that it could delay the implementation date of that ban to allow the existing cardroom a period of transition in which to recoup its investment or to transfer its operations. In fact, the ordinance as drafted by the Council's staff permitted the existing cardroom to operate for the remainder of its existing license. And as it happens, that would have meant operation for the following year, 2006. I suppose this is all upset by the Edmonds case. Is that right? Well, the Edmonds case is certainly the case cited by the City as reason for its actions and by the District Court based on the Edmonds Court's reading on the limited powers of cities to act with respect to a cardroom, well, any form of gambling operation. The difficulty, of course, with the Edmonds case is the Edmonds case does not take up the constitutional problem that is presented here and therefore doesn't answer the fundamental, well, several of the fundamental questions that are presented in the case. You don't disagree that that's what the Edmonds case requires, is all or nothing? Well, the Edmonds case, the statute that the Edmonds case is concerned with requires, essentially, it's an allocation of power between the State and municipalities. And it says, we, the State, are the only entity that can regulate the way in which gambling will occur, whether it's what days of the week you'll be open, what kinds of card games you can have, that sort of thing. The cities cannot do that. All that can be done by municipalities is ban it or allow it. And so that provision of the statute was invoked in the Edmonds case as reason to say that there isn't latitude under the statute to do something different than ban or permit. Here, the city of Kenmore banned, as in its judgment, the card game operations. The question that's presented is several fold. First of all, did they do it effectively, given that they didn't amend, given that it was now a nonconforming use and they didn't amend their nonconforming use statute, they seem to have left it the permission to operate, because the nonconforming use statute allows a nonconforming use to operate indefinitely. They didn't amend that provision. So on the basic structure of its action, it didn't accomplish an end to this business's operation. So we go beyond. The question is whether gambling trumps the nonconforming use statute, I guess. Well, that is one way to look at the question. And the city of Kenmore would urge that gambling is a vice-like behavior that doesn't have the benefit of the 14th Amendment. In Washington, though, the case law is very clear that any lawful business has a property right, is a property right, and that property right is therefore protected by the 14th Amendment. It's also very clear that — What U.S. Supreme Court case backs you up? On which subject? What you just said. To start with, the question of whether there is a property right is a state law question, and many, many Supreme Court cases have so held. That's correct. So then we turn to the question of state law and look to see, is there a business — is there a property right to continued operation of a business? And the answer is yes. The Thomason case says that there is such a property right. Now the question is, when you take away that property right without an amortization period to allow a transition, have you violated the 14th Amendment of the United States Constitution? And on that subject, we cited the Thomason case and the Rodesalia case, both state cases. No, but I'm asking what U.S. Supreme Court case helps us analyze that question. I understand that, Your Honor. I'm coming to that. We cited to the Court the state court decisions that identify this 14th Amendment due process right to have an amortization period. There is no United States Supreme Court case that addresses — that we've cited, and I don't think there's one that's cited by the City of Kenmore either, that addresses how a due process 14th Amendment analysis is conducted with respect to termination of a nonconforming use. Presumably, Your Honor, that analysis fits within the 14th Amendment substantive due process rubric. It's not a procedural claim. We're not saying we're denied a hearing or notice or opportunity to be heard on the subject. The challenge is to the substance of the action. So it seems that this issue has to be analyzed under the 14th Amendment. And it — Go ahead. Finish your point. And I think what the state — the Washington Supreme Court was saying in the Thomason case and also in the Rodizelli case is it was collapsing the elements of a substantive due process analysis and saying if — if you have a nonconforming use that is — has obviously been in existence for some period of time, that to deny it the right to continue to some period of transition without — if it's not a nuisance, there's no other reason to think you need immediate termination, it doesn't meet the substantive due process standard of the 14th Amendment. And I think if you look at the Thomason courts, if you look at how they describe the right, they say — they say this. In the absence of facts establishing a nuisance or circumstances showing a condition substantially detrimental to the public health, safety, morals, or welfare, zoning ordinances or resolutions which attempt to immediately abolish an existing nonconforming use are unconstitutional insofar as they deprive individuals of vested rights without due process of law. I think it's a substantive due process analysis that's described. But you didn't ask me that question. You asked me what's the U.S. Supreme Court case upholds. Where's the vested right here? Where do you ground the vested right? Well, the vested right is a term — I was about to say it's a term of art. It's not a term of art. Vested right is used in two different ways in Washington case law. And they're addressed in the Rodizelli case. The way — there is a whole different doctrine of vested rights that has to do with permit applications and whether you, in a sense, fix the law at the point where you make the permit application. That's not how the Washington Supreme Court was using it in connection with discussion of vested right for the purpose of a — of an amortization period. The way — But the problem maybe is that there's no vested right in gambling. Is that right? Well, vested right, as used by Rodizelli, refers only — and I'm quoting here. This is the Washington court. It refers only to the right not to have the use immediately terminated in the face of a zoning ordinance which prohibits the use. That's what vested means. It means you're — But there is a regulation that says a gambling license is not a vested right. That's absolutely right, Your Honor. There is. But that is a different question. There, the state has said, with respect to a license holder, your right to this license is not vested. But we are not here suing over that license. We are here suing over the property right that is based in the operation of a lawful business. That lawful business is, as Rodizelli describes it, a vested right regardless of whether a license that the business uses is vested. And so I guess the real problem is that as we see the 14th Amendment substantive due a vested right to do the business. Correct. And we have a Washington regulation which says that a gambling license is not a vested right. So you have a right to do a business, but you don't have any right to do gambling. Well, with Washington — Therefore, how do I get there? The Washington law, according to Rodizelli, is that you have a vested right to engage in a lawful business. Had my client lost its license, it would not have been lawful, and it would have had no right to an amputation period. But it didn't. It still has its license today. So it had the vested right that's created under Washington property law for a continued operation of a business. The only question at this point is whether, as a nuisance-like behavior, it doesn't have the benefit of that constitutional right. But the Washington Supreme Court clearly contemplated that question when it said — when it period by saying, in the absence of facts establishing nuisance or circumstances showing a condition substantially detrimental to the public health, there's a predicate here. And if the city had come in and said, we can establish a nuisance, or at least some facts showing that this is harmful to the community, arguably after trial — Why doesn't this fact that the Washington state legislature has said, you know, it's can ban it. Can't do anything in between. So here the city said, okay, we've decided now we're going to not allow it anymore. Why doesn't that reflect Washington state policy that, you know, municipalities can without all this evidence of, you know, factual evidence about a nuisance and whatnot? Why doesn't that reflect Washington state policy? Well, it does, but — That's just a regular — you know, that's the police power of the state saying that when it comes to gambling, that's it. It does, but it reflects a different policy. Over how? There's no question without that statute that the city has, under the police power, the power to ban. It could ban cardrooms. It can ban lots of things. It didn't need the Washington statute in order to do that. What the Washington statute does is limit city power, not grant city power. What it says to the city is you may not regulate gambling by deciding when they open and when they close, and you can't have this or that game. You can only do one — actually, two things. You can only ban it, and you can only permit it. And so it isn't a grant of power to the city. It is a limitation of power of the city. And here the city elected to do that, but it didn't end the constitutional right that the business had to an amortization period to allow its transition based on its nonconforming use status. Your point was that there's a vested right here in the nonconforming use. Yes. Under the Washington case law, then you say, well, they've got to have an amortization period, except you pointed to nuisance, and then you said, what was the other prong of your analysis right there? Or a detriment. Or a detriment. So why isn't what the legislature had declared, why doesn't that fit within that prong? Well, Your Honor, it might, except that this — well, the legislature hasn't done anything to determine whether — you have to step back before the law was adopted by the Washington legislature. Before that law was adopted, the city still could have banned, and lots of things are banned. The legislature's action didn't create that right. And so it didn't — at the same time, it didn't undermine the fundamental constitutional right that the business had at the time that the law was adopted to continue to operate as long as it was lawful. And the question really becomes, because it's gambling, is it exempted from that constitutional right? And there's nothing in the formulation of the right in Thomason or in Rodizella that would suggest that. And certainly there's no case anyplace that says that a business is denied its rights upon termination because it's a vice-like behavior. In fact, the only case cited by the city is the Edge case, which is concerned with First Amendment analysis. And since Lickermart and the New Orleans case by the U.S. Supreme Court, it's pretty clear that vice-like behavior retains the right to constitutional analysis. And that constitutional analysis has to be employed here. And what that means is that given the state law predicate that there's a right to — that there's a right to constitutional analysis, there's a right to constitutional  And if the business is denied its rights upon termination, then the court has to determine whether termination of the business without the amortization period is a due process violation. Now, that adjudication never happened here because the district court never took on the questions that are required to make a determination of whether that violation of law occurred. Attorney, back to the Edmonds case, did it deal with the constitutional issue at all? There is reference to the constitutional issue, but the case was framed differently, Your Honor. And when I get back up here and rebuttal, I'll give you a more precise description of how Edmonds looked at it. But the bottom line, which I'll explain in more detail, is that Edmonds didn't address the question that's framed here. What it did was look solely at the Washington statute and say, all you can do is ban or not, and said, therefore, you can't. And they viewed an amortization period as a form of regulation and said, you can't do that. What it didn't do was undertake the fundamental underlying question of whether there was a constitutional right to continued operation. I'm coming close. I have about five minutes left. I'll pick up briefly. I intended to take up three subjects. The first is whether the ordinance itself was effective in ending this use. Second is whether or not there was a 14th Amendment right to an amortization period that the district court incorrectly applied. And the third was to take up the takings claim. Because if there is a finding that the ordinance is effective, then my client has made a takings claim. The district court found that that claim was not right, reasoning under the Williamson County case that, first, there must be a litigation in state court. And the question that's presented there is not so much whether Williamson County requires it. It does. The question is whether litigation of that claim in state court will be futile. And here we have pointed out that the Washington Supreme Court, the Washington courts, have not adopted the United States Supreme Court's recent reformulation of takings law in the Lingle case. They really haven't dealt with it. That's correct. They've been around the edges of it in two court of appeals cases. And they haven't dealt with it. But in the trial court, the existing precedent will be that which predated the Lingle decision. And so the outcome, and presumably, even in the court of appeals, the outcome will be the same because the Washington Supreme Court has not changed its view on that subject. I have four minutes left. I'd like to reserve that for rebuttal. That's fine. Unless the Court has questions of it. May it please the Court. My name is Dan Lawson. I'm here on behalf of the City of Kenmore and the Kenmore City Council. The rather tortured path we got to prior to December 19th of 2005 is, I think, well documented. The city, starting in 1998, was trying to sort out this issue of gambling. And we got to December of 2005 with the Edmonds decision, with the Paradise, Pierce County decision, with the decision of Judge Lukens in the Greasel case. And the city said, we have now got a mandate. We either have to ban gambling or we have to allow gambling. And we choose to ban gambling. The issue then that arises, as the Petitioner has alleged, is, is there any amortization period? Is there a nonconforming use that we can rely upon? Is there a taking? Has there been a violation of the substantive due process? This comes up in order. It appears that the Petitioner continues to put the cart before the horse to say that they have an amortization right or they have a right to a nonconforming use because they have a property right, a vested property right. That clearly flies in the face of the statute. The statute, which is the Gambling Act, says that you don't. There's a whack pursuant to that statute that says you don't have a – there's no vesting in the license. And, in fact, when you're talking about an industry that's as regulated as the gambling industry is, we have a specific statute that says, this is what's going to happen. If you want to participate in gambling, assuming it's not for nonprofit and so on, if you want to participate in a commercial gambling activity, then you are going to be subject to this entire regimen of regulation. If I understand his argument, he separates out nonconforming use from the underlying business that was affected, you know, the gambling. Well, he looks at it just as a – he says there's a – at one point, we were running a lawful business here. Right. We're running a proper card game. Everything was hunky-dory. Everybody's making money. The city was getting taxes. Right. We were able to run the bowling alley, all that other stuff. That's true. And now you've banned it. Well, we've banned the gambling activity. Right. Bowling alley still exists. The restaurant still exists. The other activities still exist. You know, you took away, I guess, the core of what he was doing. Took away the gambling activity, that's for sure. He says now we're in a nonconforming use situation. And in that, I have a vested right under your ordinance. No, we disagree. Okay. Why? Well, first off, the Kenmore City Council – or code, rather – permits but doesn't require a nonconforming use in the event that there is a change in the zoning laws. So there's no mandatory right to operate a nonconforming use. But if you have a right to – if you're operating a nonconforming use, if it were not gambling, you would have to give them an amortization period. Isn't that right? It would depend on the nature of the activity, Your Honor. And we contend that in this particular instance, in light of the activity that we're talking about, which is gambling, that they're not entitled to that. Because, again – My question was in cases other than gambling. Oh, I'm sorry. Yes, Your Honor. Absolutely. Well, again, depending on the nature of the right. We could think of another perhaps highly regulated industry that might or might not be entitled to an amortization or a nonconforming use option. But everything that the city council did in connection with this ordinance belies the claim by the petitioner that they're entitled to or that the city intended to grant them nonconforming use. However, Rhodazelia – and I'm sorry, I don't know exactly how you say that. I think Rhodazelia is correct, Your Honor. Rhodazelia, which you cite for the fact that you have the authority to preserve, regulate, or even terminate nonconforming uses. Right. Even though there is a nonconforming use, we can go back to the statute. But right in it, it says, also said that, however, cities are constitutionally required to provide a reasonable amortization period. Right in the case which you suggest says, I can either allow it or I cannot allow it. And then, that's what council's arguing, under the 14th Amendment, there's a substantive due process guarantee, and you must give me a nonconforming use in the form of a lawful business which I still have the ability to run. You just tell me I can't run it here. I still have the ability to run it. This nonconforming use may be terminated by the zoning ordinance or by something, but such a termination is unconstitutional without the provision of the reasonable amortization. But that presupposes a vested property right. That entire analysis presupposes, and Rhodazelia did not involve gambling as we are dealing with here, presupposes that gambling has a vested property right, and we contend that it does not. There's no case in Washington that says there is. In fact, we have cases in Washington that indicate that approved gambling activity is a legislative privilege, not a right. You cite it to the State v. Godaro case and the Paradise v. Pierce County case. There is no right to operate a gambling facility. And as such — But it is a lawful business operation. It is, but it is subject to the statute that sets it up. And it's subject to, as is the State of — as is the City of Kenmore, subject to the And if we are to construct this statute and this ordinance to require the City to provide an amortization or nonconforming use for a period of time, then we fly in the face of the case law in Washington. We fly in the face of the statute itself so that we're in the position as the City of Kenmore of giving something to the Petitioner that case law and the statute and the Constitution do not require us to do. Well, let's turn to the Washington Constitution. It says that in its essence that municipalities can pass any law. Yes. But it can't be, quote, unduly burdensome. Correct. Now, isn't this unduly burdensome? No, it's not, Your Honor. If what you're talking about — I don't believe that it is, because what you're talking about essentially there is getting to the Fourteenth Amendment substantive due process issue of unduly burdensome. Right. Well, clearly in this case, the — If you don't give an amortization period, isn't it unduly burdensome? First of all, we have to look at the entire operation. There is a bowling alley, there's a restaurant, there are other activities on this site. Yeah, but you do have to deal with that issue, unduly burdensome. Whether it is or isn't, yes. But we think clearly in this case that all of the three prongs of a substantive due process argument are met by the City and what it did here. But as to the unduly burdensome issue, we have not stopped that operation from going. We simply stopped the gambling operation. We haven't stopped anything yet because of an injunction in place. But we would not have stopped anything but the gambling operation. Factually, who owns the property? The property is not owned by the petitioner in this case, but it is my understanding, Your Honor, that it is owned by a related entity. It's owned by? A related entity. Now, I'm not certain that's actually part of the court record, so I don't want to be that to be the case. Does it show whether there's a long-term lease or whatever? My understanding, again, I'm not sure that it's in the record, Your Honor. It may be in the hundreds of pages of the excerpts of records that we have. My understanding is that there is a long-term lease, a ground lease, for the building in which the card room sits. Now, are there other viable uses for the property? Certainly. It's in the middle of Kenmore. And Kenmore is in the process of undergoing a major improvement. And there are other commercial activities that are next to it. It has been operated for many, many years as a bowling alley and a restaurant. The fact that the gambling activities may produce more money than the restaurant or the bowling alley doesn't mean that there aren't other viable uses for the property. And certainly, the license itself is portable, as I understand it. And so even though the city of Kenmore were to say, you can't operate a card room in the city of Kenmore, there's nothing to prevent the licensee, in this case, Star Northwest, from taking that license to some unincorporated part of King County. Well, that's true. That may be true. But I think the facts are that they expect millions of dollars in remodeling and upgrades. So to say, now, just pick up and go across outside the city limits, that's not a very fair statement. But by the same token, Your Honor, when this operation was put in place, the owner knew, number one, that his license was subject to revocation at any time and certainly had to be renewed every year. The owner knew because the city had been talking about doing something about gambling, either allowing it, in fact, had allowed him in for a period of time to operate unfettered by any competition. But since 1998, at least, when the city was incorporated, this topic was a matter for discussion. And the possibility that at some point in time, this would be removed from his opportunities was out there. It was always out there. It was a subject of constant discussion over a period of six or seven or eight years. When did the remodeling take place as compared to when the city incorporated? I don't know the answer to that, Your Honor. But I believe that at least some of the remodeling took place in years after the incorporation. In years after the incorporation. I'm pretty sure that some remodeling took place beforehand. Now, whether or not that remodeling was limited to the card room or was also throughout the bowling alley facility, I don't know. But certainly, as of December 19th of 2005, there was actually, on record, a vote by the city council that you shall not gamble here anymore. And as of that point, almost two, well, more than two years ago now, more than two years ago now, the city has involuntarily given up an amortization or a non-conforming use to the plaintiff, the petitioner here. It wasn't our intent, but that's where we are. We're in a situation where, at one time, the petitioner was indicating that give us through the end of our license, which would give us through the end of 2006. And they make mention of that in their opening argument about how they changed the language of the ordinance to take that away, that they really wanted to have until the end of 2006. Well, now we've passed through the end of 2007. The operation is still going. And who knows when we'll get a final decision, but it's pretty clear that we're looking at an amortization period or non-conforming use period, whether we want one or not, and we think it's not justified. Just to follow up on Judge Fletcher's question about the Washington State Constitution due process clause, what's the main case that you would say addresses by the Washington Supreme Court, other than Rodezalia, or is it Rodezalia? Well, we have Rodezalia. We have Thomas, and we have the other cases. And all of what we have cited in our brief, Your Honor, but essentially what we've got is a case where the State of Washington has a three-pronged test for substantive due process violations, and we believe that clearly the State of Washington has never looked at a case like this involving gambling. No, it has not. But its test is pretty well-formulated. Yes. The test is pretty well-formulated. It's consistent, essentially, with the federal substantive due processing test. It's a little bit more stricted in one way, but we believe that clearly we've met all of those tests here. We've met the... Is there any reason why we shouldn't ask the Washington Supreme Court to look at this issue? I don't think that you need to ask the Washington Supreme Court, but I know that you'll do what you believe you need to do. But I don't think that there's any reason to ask the Washington State Supreme Court to clarify what has been accepted as the Washington State standard for substantive due processing takings. I think that the law in Washington is fairly well-settled, that we have to show that there's a legitimate public interest. We have to show that there's... That seems to be met here. Yeah, absolutely. And so does the... And due burden is probably the key problem. Well, it may well be, depending on how you look at it. I think that the unduly oppressive to cardroom owners is really what it boils down to. And again, getting back to what Judge Fletcher asked, this ordinance does not deprive the applicant, the petitioner here, of any right, any viable use for this property. And I think it's a pointed question, and I think it's a good one. And in this particular case, simply because we say you can't gamble here, we're not telling them you can't do anything there. We're simply saying you can't gamble. And we're saying you can't gamble because the legislature has said you can't do anything but either allow it or ban it. You've tried, City of Kenmore, so says Judge Lukens in his decisions, you've tried to give moratoria, to grandfather this one operation. You can't do that anymore. That smacks of regulating. And the state courts, as well as the legislature, have said you can't regulate. That's our job, commissioners, the petitioner has the job of regulating. So you can't do that. You either have to ban or you have to allow. And we took that as being our only option, was either door A or door B. We took door B, which is to ban. That being the case, all we've stopped them from doing is operating a card room in that facility. We haven't stopped them from operating a card room someplace else, nor have we stopped them from operating any other viable activity on that property. But tell me, refresh me as to exactly the procedural posture of this case. State claims were dismissed without prejudice, is that right? Yes. The state substance of due process claim was dismissed. No, the federal claim was dismissed without prejudice. It was the federal takings claim that was dismissed without prejudice. Not the state constitution substance of due process. But didn't they remand state claims? The state claims are, in theory anyway, in state court as we speak. Now, what are they? The state claim, the state essentially substance of due process claims. They are alleging in state court essentially what they tried to allege in front of the federal court. I thought the district court here ruled on the substance of due process, Washington's constitutional claim. Well, the. An inner judgment on that claim. There may be other claims the district court didn't touch that they're litigating over in state court. There's one claim that it didn't touch, and that was the, it said that the takings claim was not right. Right. I thought that's what was being litigated in state court. It is, Your Honor. You're absolutely right. But what other state claims were remanded? There was a claim that was still extant in this case, the federal court case having to do with the gambling tax. And so it was. That was dismissed by the federal court and was in fact taken up by the state court pursuant to a subsequent complaint by the Petitioner here. So we've got the state court dealing with the gambling tax issue as well. I'm going to want to go on a little bit different area because I think it's important. Not only did you win or did you, the judge believed you won in district court, but gave you lots of money. It seems to me that Miles versus the state of California, our case says a party who obtains dismissal for lack of subject matter is not a prevailing party as to those claims. So why was it, why was it okay for the district court then to give you all that money when a lot of these were dismissed for lack of subject matter? I think the primary difference between the cases that come typically before the court and this case is that we're not talking about some abstract notion of prevailing party or whether. We've got to get to prevailing. No, no, no, no. What I'm saying is that we're talking about a contract that was negotiated by the parties. We're not talking about a statutory right that's granted pursuant to some law that the prevailing party or the party in favor of whom an affirmative judgment is rendered is therefore the prevailing party. And if you're not that, then you are not the prevailing party, which I think is in line with the Miles case, Your Honor, I'm sorry. We're talking about a case which is decided on this issue pursuant to essentially a contract between the parties, a stipulation. And that stipulation simply says that the city has to prevail, prevail with respect to the issues that are presented to the court. And it doesn't indicate, nor does it require, that there be a decision on the merits. Nor does it indicate But I didn't see anything in her, in her decision that went back to some kind of a stipulation that she Oh, no, Your Honor, she certainly But the honest truth is she had to come up with a prevailing party. And some of this is going back to State court, as the good judges told us. The taking stuff isn't even here yet. Well, a portion of the takings claim is not here, but it's not here because of anything that the city did or didn't do. But the bottom line is the city, the court was aware of. In fact, it was presented to the court as being the stipulation between the parties. She wasn't reaching for anything. The plaintiff had commenced a lawsuit alleging nine causes of action. All of them but two were dismissed. One of them was remanded, and one was dismissed without prejudice. Not only that, but it seems to me that she mixes costs with fees and then tries to suggest that she's not going to follow the federal statute or federal rule, and she's going to adopt a local rule that has nothing to do with fees and throw that in the middle of costs, and therefore, she's going to allow fees well filed after it should have been filed. But it doesn't even talk about the excusable neglect standard, which we put together in commission for Idaho High Desert v. Jost. Well, the judge has, in connection with the awarding of attorney's fees and costs, has wide discretion and only can be overturned for abuse of that discretion. I understand, but she doesn't talk about excusable neglect. She's talking – she talks there about the fact that the rules in this case, the rules in the Western District of Washington, are, to use her words, confusing. The interplay between the federal rule and the local rule are, to use her words, confusing. And in this particular instance, again, if you go back to the advisory committee's notes with respect to the amendments to 54, Rule 54d, the purpose, primary purpose for the amendment was to assure, to the extent that you could, that parties had the opportunity to bring those claims and to have those claims, including attorney's fees, be litigated and, if necessary, appealed at the same time. We certainly have that here. The motion for attorney's fees and costs was filed 18 days instead of 14 days after, within the 20-day period mandated by 54d, local rule 54d. Clearly, it is our position that you cannot say that the judge manifestly abused her discretion in deciding that the rules were conflicting here and not clear and that they were confusing and deciding to decide to rule on this – on its merits, because certainly the defendant or the plaintiff in this case had ample opportunity to respond. And there are other cases out there that are cited in our brief wherein the party resisting a motion to – for attorney's fees had ample opportunity and the decision was not reversed. Thank you. Thank you. So we have some time for rebuttal. Is our understanding of the procedural posture of the case correct? That is, the takings claim. Yes. The takings claim is proceeding in State court. It's back in State court, moving along. Yes. Right. And the district court ruled against you on the State of Washington Constitution substantive due process. Correct. The only constitutional claim that went back to the State court is the takings claim. Is there any reason why we shouldn't ask the Supreme Court of Washington to help us out on the constitutional claim? Well, I think the – it depends on which one we're talking about. The Federal constitutional claim under the 14th. No, no, no. The State constitutional claim. Well, I think the first thing that ought to happen on the State constitutional claim is a trial. This case was decided on summary judgment, and the court did not – obviously had to give my client all reasonable inferences from the evidence, and the application of that should occur at the trial court. I think the Washington Supreme Court is very clear about what the law is with respect to a substantive due process claim here. My client has a property right to operate a lawful business. It is lawful. It's lawful today. There's a – he still has a license today. But you have your best shot in the fact that in front of the Washington Supreme Court at this point, because we're giving you every benefit of the doubt. So if you're going to win this argument, it seems to me Judge Fletcher's question is appropriate, because you've got the best chance. If you go back to trial, you're not going to have your best chance then. We're going to look at whatever the evidence is. I understand that. And certainly the Washington Supreme Court's pronouncements on this case are very helpful to my client's case. An interpretation of Thomason and Rodizalia is – But they've never faced this specific interplay of the gambling police power versus – Well, but certainly there's never been a gambling case. And the – but I think the Washington cases are – bottom line, you're right, Your Honor. There's never been a gambling case. And what the State Gambling Act means with respect to whether there's an existing lawful property right or right to operate a lawful business I suppose has not been analyzed. It seems to me, though, fairly – there's a fairly powerful argument that whatever limitations may accrue to my client because that license is not vested doesn't change his fundamental property right to operate a lawful business. And that property right sustains the substantive due process claim. So I think he can win that case here. But certainly the Washington Supreme Court could analyze the issue and eliminate any ambiguity about how it sees the interaction of the statute and the lawful property right. With a minute and 51 left, I wanted to clarify a couple of things that came up in argument. First of all, the – my client has invested more than a million dollars in the last five years in the upgrades in the facility. Indeed, he spent more than – on the order of half a million dollars in the year after the proposition that was put to the voters on whether or not to ban gambling or not. So there's a very substantial investment back expectations here on the part of my client, a belief that he's a key part of the community, and an intention to remain that. If the ordinance becomes effective, the record is clear. The Kenmore lanes will close. The bowling alley, the card room, the restaurant, and the bar. And that's – the evidence is all in the record that without the card room, that business can't be profitable and also cannot be relocated to a different location. So on this record, the business will close if the ban is implemented. The – Do your client have a long-term lease? Is that in the record? I was going to turn to that. I'm not sure it's in the record, Your Honor, but it is – what counsel said, that there is a – that the property is owned by a related entity is correct. What he said that there is a lease right is correct. The term of that lease I don't think is in the record, but there are certain – there is a – I shouldn't comment on the record beyond that. If there are any – I have eight seconds left, so if there are other questions – Your point about the bowling alley and the restaurant closing, is that just his statement in the record that he would close it? No, it's a financial analysis. We've submitted evidence from an expert witness on the question, as well as from my client's accountant, as well as from his person who's in charge of the account, explaining that the rest of the business operates at an operating loss and that the profits from the card room sustain it. The city actually designated its own expert, but never contradicted that opinion at trial. Your point is – Correct. I'm sorry. There was no trial. They never contradicted that opinion on summary judgment. Okay. Thank you, Your Honor. We would ask that the district court be reversed. The matter will be – interesting case. The matter will be submitted.
judges: Fletcher, Paez, Smith